We have lead case number 17-3577, Amber Gascho et al. v. Global Fitness Holdings et al. Argument not to exceed 15 minutes to be shared by the appellants and 15 minutes for the appellees. We'll have Mr. Bergeron, Mr. Hogan, and Mr. Owen, but Mr. Bergeron, you may proceed for the appellants. Good morning, Your Honors. May it please the Court. My clients were held in contempt, Your Honors, for conduct that occurred before an order even issued and for failing to take steps that the order did not require. Plaintiffs have not identified a single case from any jurisdiction where a party, much less a non-party, was held in contempt under such circumstances. And the reason for this stems from the basic limitation of the contempt power. Can I just add that there's two different things that seem important here. One is the pre-order conduct, so we're going to talk about that, but the other is party-non-party. And I was probably pretty inclined to think it was weird to be imposing contempt on non-parties, but this Gary's Electric case seems to be very supportive of the other side in the district court. Does that kind of dispose of the non-party point? It does not, Your Honor, and I don't want to deflect the question. I should have said I'm going to address the issue of the clarity of the order and the pre-order conduct issue, and Mr. Hogan will take the other issues, including the non-parties. Okay. All right. So that means we're going to talk about pre-order stuff. Go for it. We are, and I actually want to start with the clarity of the order because, Your Honor, the order in question refers back to the settlement agreement. It says the fees must be paid in accordance with the terms of the settlement agreement. So we need to look at that. And this agreement on the front page in bold font and capital letters says it's conditional, and you're not going to see any discussion in their brief of the conditional. Do you not have to prepare for the contingency to come to pass in some form, and why can't the district court consider that? No, Your Honor, because that's the whole reason that there is a conditional nature of the agreement. But what about the district court's concern that you would then just drain the assets, as Judge Sargas thinks you did, and it's reasonable in looking at the conduct to come to that conclusion. I recognize some was pre-order, some was post-order, but he looked at the totality of the circumstances and said, look, they drained the company to avoid paying this obligation that they knew was going to come to pass. And I recognize that Judge Clay dissented and the Supreme Court asked him, but ultimately he thought pretty reasonably that this would come to pass. Your Honor, but the issue is the agreement we signed up for said it's not enforceable until all the conditions are satisfied. So at that point in time, the obligation does not ultimately spring into existence until those conditions are satisfied, which is part of the problem. Your question implicates both the pre-order conduct issue as well, and maybe I'll just go there, but part of the issue there, Your Honor, is the distribution question. What is the answer to this point? This really goes to both of you. Could a contempt motion have been brought in 2015? No, Your Honor. It's after the settlement agreement. It's after the order. There's an appeal. They learn about conduct that suggests they're not going to be able to satisfy the obligation. If you're going to say they couldn't bring a contempt motion in 2015, what could they have done? Well, they could have asked for a modification. Is there a case that says they couldn't have brought a contempt motion in 2015? Why couldn't they have brought it in 2015? Well, they couldn't have brought it in 2015 because the obligation, part of the issue is the order does not set aside any requirement, does not impose any requirements to set aside funds, which is what they were saying. Isn't there some implicit, I suppose, obligations that go to good faith, bad faith in that, regardless of reading just the literal words? But the problem is if it's implicit, then it's not explicit. It has to be explicit to be a basis for contempt. And I think a good illustration of this is Judge Sargas asked an opposing counsel during one of the colloquies, and it's at page 40, 50, and 51 of page ID. He says, assume that the Supreme Court reverses. Then there would be no money owed, and you would not seriously contend under that circumstance that they had some duty to set aside funds. And the answer to that was no. But what that shows is whether or not you're held in contempt does not depend on what the order says. Can I ask you a different question, which is when the Supreme Court issued their final decision denying cert, do you concede that the order at that point in time became definite and specific? After the time expired for rehearing, yes. So you would concede then it did. Yes. And that the plaintiff could show that, obviously. So then it shifts to you to show inability, basically. And I want to go to the third step of that very quickly, which is the clean hands. Right. What can the district court consider in the clean hands analysis at that point? Well, Your Honor, then you look at what steps were taken post-finalization of the order. But here we don't really have that record because the second that it became final, they ran in and got the TRO. That's my question, I guess, is in looking and making a determination of clean hands, can the district court consider the totality of the circumstances? In other words, I understand there's not a lot post-order. Your Honor, I think the court could consider the background context. But in terms of pre-order conduct, he cannot go back prior to the issuance of the order and hold us liable. Pre-order conduct, or do you mean pre-April 20, 2017 conduct? Which do you mean when you say that? I mean both, Your Honor. I mean, there's two issues, right? So the unclean hands only applies after April 20th? Well, Your Honor. Because it's not definite and specific until then? That's your point? That's my point. It's not definite and specific until then. Now, the point, part of what I was— Do you have a case for that proposition that because it's not definite and specific until then, the district court can only consider the clean hands of the party post the definite and specific? I think what you can—if the court wants to look at what your pattern and practice was, I think you can do that. But you can't sanction a party before the order becomes clear and definitive. And that's part of the issue. So I asked you before, and I can understand why you wouldn't want to talk about it, but what could the other side have done in 2015 if they'd gotten word that assets were being dissipated and there wasn't going to be 2.3 or 2.9 left? Yes, thank you, Justice. If they had gotten notice of that, what they would have had to have done is come to court and said, look, we have a concern. We need to modify the order to place a restriction on their ability to spend funds. Because the settlement— One possibility is to change the settlement so it has an escrow for the fees. What about breach of contract at that point? There's no— So it's not contempt. It's not contempt with all of its specific and stuff. It's contract, that the basic obligation was to do X. What you're doing is not good faith compliance with X. But the problem is, Your Honor, in terms of breach of contract, because the contract is not effective at that point, they could not have come in and said breach. If they were concerned about the expenditure of funds and they wanted to modify that or have the court place some restriction on us, they would have had to change the terms of the agreement. They have brought a fraudulent transfer claim in 2015 if there were evidence of fraud? If there were evidence of fraudulent transfer, they could have tried that, Your Honor. And as we pointed out in the reply brief, they did spend time trying to find a fraudulent transfer claim, but they never have brought it. And obviously I want to be clear. A party in these circumstances may have other remedies at its disposal, a party in the plaintiff's position. But the remedy that they don't have here is contempt. And the reason is because of the pre-order conduct and because of the conditional nature of the settlement agreement. So just one last thing since you're supposedly the – not supposedly, the person who's going to talk about this. Let's just say for the sake of argument you're right about this pre-order thing. But we don't buy the pre-order being April 20, 2017. We think it's when the settlement was initially approved by the district court. So for whatever reason, it's roughly 2014. So we think you're right hypothetically about the $10 million payment, and that was obviously a big feature of Judge Sargas' order. But you're wrong about it not starting – the duty not starting until 2017. Would it be appropriate to send it back to find out what happened between the final entry of the order and the present in terms of whether you can be contempt for that? Your Honor, I think that's one possibility. I guess what I would say is that conduct was looked at pretty extensively below. They had an expert come in and scrutinize it all. Right, but if he mistakenly believed the $10 million, right, because the $10 million is the – It's kind of a bait and switch on him. I mean he thought this is easy. If I'm right about this, I don't have to worry much about the others. But there's a lot of other – there's salaries. There's rent. There's the $300,000 that comes after. And my point on that, Your Honor, is their expert never opined that any of that was excessive. No, but he points – That's based on a mistaken premise. The premise being the $10 million counts. No, but I'm talking about their expert never opined that any of these expenses were excessive. In other words, he did not say, oh, you paid this guy way too much or you paid excessive market rate. Wait, but this is a different point, which is Judge Sargas was looking at it through one prism. Right. And he was looking at it with the backdrop of the $10 million. Right. If you're right about the preorder and we take away the $10 million, he might have a deeper dive into the rest because that's what a district court does. If they find something that says, boom, this is it, this is the elephant, I don't need to go any further, they're not going to spend a lot of time on the other stuff. I understand, and I agree that's a possibility. I guess what I would say is based on his findings and the order – Your basic point is they had their shot to do that. They had their shot. They had their shot. I got it. It's a fair point. I don't – All right. Thank you, Your Honor. All right. Thank you very much. So are we hearing from Mr. Hogan now? Okay. May it please the Court – You're the party, non-party guy? I'm sorry. You're the party, non-party guy. I can ask questions about party versus non-party? Certain. Okay. So what do I do about this case, opinion by Judge Moore, Gary's electric? Because, I mean, I initially looked at this case and said, oh, gee, they weren't even a party to this. That seems odd. But then I read this decision and I thought, hmm, it seems like it applies. Contempt is allowed, civil contempt. Contempt against officers when the order goes against the company for which they work. Am I misreading it? No. In that case, certainly there was, excuse me, a controlling day-to-day person who engaged in willful conduct in violation of a court order. Now, I think to answer your first question is what should you do with it, my response is you should disregard it as irrelevant because Gary's electric was an ERISA statutory case. Okay. But with any corporation, it is going to do its business and execute the business of the corporation through the officers and directors of that company. And here, the judge said basically these people had noticed. And so why is it inappropriate to impose liability on them even though they were not a party? Because we don't have an injunction directed to the company. It goes back to the issue of whether we have an order that exists here that can support a contempt finding. So if a company is ordered in this process, let's just say it's definite, accept all that, that it's specific and definite, and you had to escrow the money. So let's take the plaintiff's money, which you did escrow. But let's say you didn't do that and the officers took the money. Now, you're saying the court could not hold the officers in contempt if the company is now bankrupt? If it was a monetary judgment, which is all we're dealing with here, assuming that it was definite and specific, that's correct. There may be some other relief available, but it's not contempt of court. Because this goes back to my fundamental point. Wait, just to make sure I'm getting the hypothetical. The hypothetical is the agreement said set aside the money for the class members, and they didn't set it aside. You can't hold the officers in contempt for that? The settlement agreement says that? Yeah. That's what I thought his question was. He was focused not on the fees, but on the class payment. And it said in the agreement, set us put in escrow, whatever it was, $1.5 million. They don't put it in escrow. They use it for other purposes. We won't call it fraud. They just use it for other purposes. But they don't comply with the agreement. Doesn't Gary's Electric say you could hold the officer in contempt? If I suppose, and I apologize. I guess I misunderstood the hypothetical a bit. But I suppose where you're compelling some affirmative act like that as opposed to the agreement set aside $1.5, they don't. They spend it. It's gone. Well, I would submit that in this, assuming we have the type of order that we have here, that it's still insufficient to support a contempt finding, even against the officers, because it's not a clear and specific order. It's merely an order adopting a settlement agreement. So that's the point, that it's just incorporating settlement agreements, and when you do that, it's not sufficiently clear? That's one point, yes, Your Honor. So we cited the Seventh Circuit authority in the H.K. Porter case, for example, where a court did something similar, which was I adopt and approve the settlement agreement, the terms and conditions are adopted. But Judge Sargas points out the Seventh Circuit's even in part disregarded that and said that we should construe that opinion narrowly. It did that in an injunction context where there was a clear injunction compelling some affirmative action, not merely conditioning what was happening based on the terms and conditions. But back to my question, the same that Judge Sutton asked. Your answer is no, the district court cannot hold them in contempt, even if they violate a definite and specific order. A definite and specific order that says you must put this in escrow. So explain, you started to say with Gary's Electric that that's an ERISA case. Tell me why that changes the analysis when this is not an ERISA case. What about ERISA allows you to go after officers but not here? Certainly, Your Honor. It's been the law of this circuit for 90-plus years based on the Carter v. Fleece case that a monetary award or monetary judgment does not give rise to contempt as an enforcement mechanism. And that's effectively, assuming that the order itself, putting aside the Seventh Circuit argument that it's not clear and specific, they're enforcing an order to pay money, or they're trying to enforce an order to pay money, essentially by making my clients personal guarantors when they never agreed to do it. Now, that law has been settled. We've cited many cases to that effect. But I have Gary's Electric. I read it. Tell me what ERISA does that makes officers liable there but not here. There are certain exceptions to the monetary damage rule, which says you have to use execution to recover. One of them is a federal statute provides the cause of action. Does ERISA say you can go after officers for violations of ERISA? Is that what it says? ERISA does not. But it provides the statutory remedy, which is the exception to the general rule that a monetary award... So there's a right of action against officers when you don't get your pension. Your pension's gone. ERISA says you can sue the officers. Is that the point you're making? No. My point is that Gary's Electric is irrelevant because it's not the type of monetary award that we're dealing with here, which can't give rise to contempt in the first place. I concede that where the order might give rise to a contempt finding, like it did in Gary's, that a controlling officer who willfully causes the company to violate the order could be held in contempt. It's the Rule 65 standard that someone who participates, who with knowledge aids or participates in the violation. My point is this is not a Rule 65 order. This is, at best, a monetary award that... Just so I'm getting this point, which seems slightly different, is Rule 65 does have some rules, 65D, about this, and those rules weren't invoked here. And you say if you don't invoke them, you can't do this. That's your point? My point is this is not akin to an injunction. This is, at best, akin to a monetary... But, I mean, if we take everything the same as this, but the end of this order, Judge Sargas says, and consistent with Civil Rule 65D-2 or whatever the one is about officers, this applies to the officers. That would have changed everything? I don't think it's the magic language. No, if it was a proper injunctive order and that's what it truly was in substance, then yes, that that language would apply. But you can't... It's not magic language that you add language to a monetary order and magically turn it into injunction. Do I understand you to be saying that because the obligation to set aside the funding was incorporated in the body of the settlement agreement and the court just basically referenced or adopted that, that we can't enforce it? But if that language, that specific language, had been set forth in a separate order, then you think that contempt could have been had because it would have been in the nature of a mandatory injunction. That would seem to be a putting form of a substance. No, I don't think that's what I'm saying, and if it's okay if I... Yeah, no. I don't think that could happen in this case because the contract itself... No matter how it's expressed, it just couldn't happen because of the nature of the case. Correct. The contract itself sets forth a conditional contingent obligation that had not occurred when the order was issued. So even if the order incorporated it, it would be conditional. If we reject that and say, no, no, no, no, no contingency, definite and specific, then? Then we go to my second point, which is it's a monetary award that's not enforceable via contempt, and for that reason, Gary's Electric, as an exception to the rule, does not apply. Wouldn't that allow somebody to just be able to thumb their nose at a contract that they entered into and basically thumb their nose at an obligation imposed by the court? And that's certainly not what we want. I don't think it does, Your Honor. I think it just reinforces the rule that's been in place for nearly 100 years that a monetary award is enforceable via execution. And I do take issue with... Any? Yeah, we've cited the Markarian case out of the First Circuit. I think it's from 97. It lists the exceptions, and one of them is a federal statutory scheme. That case doesn't deal with Gary's Electric. It does not. But if you look at Gary's, the cases that are cited... What I'm saying is, are there any Sixth Circuit cases post-Gary's Electric that stand for your proposition that it's limited to ERISA and the like? Not that I've seen, but it is. And if you look at the cases that are cited in Gary's Electric, it's federal statutory cases. So it fits squarely within the exception. And we've actually cited not just Markarian, but some other court decisions that have recognized those same types of exceptions. So just I'm trying to figure out the stakes of breach of contract. Let's say there's not evidence of frauds. There's breach of contract and civil contempt. I take it the stakes are you would agree, given that the district court retained jurisdiction over this, under Kekkonen, they could have brought a breach of contract claim against the company, Global Fitness, for failing to pay the 2.3, right? I mean, forget the merits of it, but that would be procedurally okay. You agree with that. But the stakes are that that would not give them access individually to the officer's money. So that's why we're doing this, because a breach of contract doesn't let you do that unless you do pierce the corporate veil or fraudulent transfer. But civil contempt allows you to avoid that, yeah. It's exactly right, Your Honor. My point is civil contempt is not a way to make guarantors of the officers and directors. And that's essentially what their attempt is. Because you're saying that tort law, in response to Judge Sutton's question, can't do it. So you're saying the only way to the officers is through civil contempt. Unless there's fraudulent transfer or there's a piercing veil type situation or other, yeah. But what your co-counsel may have said, they looked for this and didn't find it. Right? I thought Mr. Bergeron said that. They certainly engaged in significant discussion. And I would just submit, in conclusion with Judge Donald's question, that I don't, I know we're accepting the notion that there was some misconduct here, but I submit that there isn't any. Judge Sargas rejected that. Well, good for you on behalf of your client. All right, so we've heard from you. I think we're going to hear, is it Mr. McCormick we're going to hear from? Yes. All right, thank you. Good morning. May it please the Court, opposing counsel. Before getting into my prepared remarks, I want to go and specifically address the number of the questions that the panel raised right at the very beginning, and that deals with the $10 million. It's very clear from Chief Judge Sargas' order. The contempt is the failure to comply with the final approval order. When is the final approval order? When is it? Which one is it? The final approval order was entered in 2014. So if we find that's not definite and specific, then you lose. I would disagree with that. Okay, explain why. The final approval order was entered in 2014. Well, I rephrase that. I think if this Court were to conclude that the final approval order was not definite and specific, then that's the prima facie case of proving civil contempt. So that's the first element. So if this Court were to conclude with that, I would agree. Yeah, but you would then go to April 20, 2017, and you'd say at that point it was definite and specific. Then you would say it shifts to them to explain why they couldn't pay. That's not how Judge Sargas looked at it. It's not how he looked at it, but it's under the analysis of civil contempt. Then you go to April when it was a non-appealable order. The Supreme Court had denied cert. Then the defense that's being raised here is impossibility. Wait, so you don't lose then? The answer to my question is you don't lose. We lose under the 2014 analysis. You don't lose because 2017. Correct, because then in 2017 it became definite and specific. Then you would say they've got to show why they couldn't pay, and unclean hands are relevant, and unclean hands goes pretty far back. Exactly. In order to prove impossibility, you have to prove that you took all reasonable steps to comply. You have to prove that you're not responsible for the inability to pay, and you have to prove clean hands. And Judge Sargas spent a fair amount of time in his decision analyzing those three factors. First, over two days of testimony, the managers admitted they took no steps to comply with the attorney's fees portion of the final approval order. So the fact that they took all reasonable steps took a paragraph for Judge Sargas to dispel. I guess the question is when do they have to take the steps? In other words, do they have to take the steps? Let's just assume that it's the 2017 order. Do they have to take the steps after the contingency comes to pass, or do they have to take it before? They have to take it before. So let me ask you about this. You have a contract for widgets, right? I'm going to pay when the widgets come. You can't sue someone for getting rid of their money before the widgets come. A contract for widgets is not a final approval order pursuant to a class action settlement. But this order as to the attorney's fees was not final and approved until the Supreme Court passed on it. But the final approval order was entered in 2014, and it was entered pursuant to Rule 23, which required both parties to make affirmative obligations to the court. The court had to undergo a Rule 23 analysis. It had to do a rigorous analysis to certify the class. It had to have a hearing and make findings of fact and conclusions of law. But why is it final? I mean, it's not final and the contingency hasn't come to pass per the settlement agreement itself. I'm sorry. Go ahead. But appellants have an obligation to take steps to make sure that they can comply because they have brought this order to the court. A widget contract is the same thing. I've made representations that when you send me the widgets, I will comply. I will pay. You've not made those representations to the court and asked the court to impose that obligation upon you so you can benefit from the release and the dismissal of claims that comes within the final approval order. Yeah, but, I mean, if we're going to talk about behavior, I mean, you guys could have just as easily put an escrow requirement for the fees. I mean, I don't know. I find myself. We had a final approval order that instructed them that they should be very clear. We had objectors which ruled 23 contemplates, and it's hard to say. They weren't serious. They got a vote at this court from one of our colleagues that there was a problem with the very issue, the fees. The rule of the case instructs that this settlement agreement was reviewed by the district court, both the magistrate judge and the district court judge, reviewed by this court, and reviewed by the Supreme Court. It was approved at each and every level. So it became the law of the case. So the defender, I'm sorry, the opponent. No question. They conceded in 2017. My point is that that contingency, you knew how, in fact, in the settlement agreement, you had an escrow set up, an escrow for the $1.6 million. Correct. Why weren't you getting that? I agree with Judge Sutton. It's a little hard for us sitting here with sophisticated lawyers that have an incentive to protect their own money not to take a simple step. But the law requires that they take all of your money. What's your answer to the question I asked of your friend? You have brought a contempt motion in 2015. Had you learned about the dissipation of the $10 million? We'll call it dissipation for the sake of argument. No, because the contempt occurred when they failed to pay pursuant to the final approval order. You could have brought a breach of contract claim at that point? If there were fraud, you could have brought a fraudulent transfer claim at that point? Absolutely. Both? You could have brought breach of contract then? Had we known, we could have brought a fraudulent transfer. In 2015? Had we known, yes. I want to take a second to address that because opposing counsel raises numerous times that we briefed fraudulent transfer and were never able to prove it. How is it a breach of contract in 2015 as to the $10 million? Because the $10 million was before the contract was signed. The $10 million was after the contract was signed. No, no. Yes, it was.  It doesn't count until it's entered. Correct, but the contract between the parties was signed in the fall of 2013. You're right, you're right. The transfer was made in the spring of 2014, so it would have given rise to a breach of contract. Why? Where does it say that they have to? Because I look at the settlement agreement and I see that they have to put the $1.6 million aside. Where does it say they have to take any other steps? It says that they must use their best efforts to ensure that they comply and that the final approval order and the settlement agreement is effectuated pursuant to its terms. And they jointly represented with us to numerous different courts that that settlement agreement— All right, well, you just established there's a good breach of contract claim. Why don't you do that? Well— Why is it contempt? I mean, this is how you were going to start with the $10 million. Sure. It's important to note that when we learned on April 18th that they were not going to comply with the final approval order, we immediately filed a motion to enforce the settlement agreement before the district court judge. Very quickly into the discovery, we learned that they had made material misrepresentations to the court and that they had fraudulently transferred the assets, ensuring that they were not going to be able to comply with the court order. The court did not make any findings of fraud. It did not, but the appellants in the very beginning in their defense, they argued that we were nothing more than a secured creditor. So that issue was specifically briefed before the district court, and we set forth in a motion all of the badges of fraud that existed within the conduct that we discovered. What are you trying to do with this? This is not the premise of the district court's decision. It's not the premise, but I'm trying to explain that a fraudulent transfer did occur. The appellants abandoned that defense, and the district court moved forward with a finding of civil contempt. Why change civil contempt law if you've got a fraudulent transfer? We are not changing. I would disagree with the premise of the question that we're not changing civil contempt law. But why do you need us to do anything if you've got a fraudulent transfer? Why not just sue for breach of contract, which you're going to win, and fraudulent transfer? Because contempt is the disobedience of a court order, and the evidence here clearly establishes that the appellants willfully and deliberately disobeyed a court order. Yeah, but I mean, I don't remember you citing a case for pre-court order conduct. I mean, that's the part that seems like we're being asked to move the law here. There are numerous cases cited in our brief which discuss when a court looks to clean hands, looks to whether or not they took- Judge Sutton's question was, is there a case, because I didn't see a case in your brief, for the proposition that a court can consider pre-order conduct? I believe there are briefs, or I'm sorry, there are cases in our brief which discuss that you can look back in time to determine if they at some point in time had the ability to pay. Which case? Off the top of my head, I believe it's SEC v. Douglas, but I'm confident that it's cited in our brief. Well, you're not going to like this question, but let's say you're wrong about this $10 million thing. What's the right remedy? In other words, I guess I should just qualify it a little more by saying it's difficult, if that's true, it's difficult from my perspective to say it was harmless because it was a big part of Judge Sargas' view of the case. So hypothetically, it's a problem. It's not harmless. What's the right thing to do? The importance of Judge Sargas' order is it's not just the $10 million. The $10 million is obviously a big chunk of it, but there is no effort made by the appellants to comply with the final approval order. At that point, so are you saying, just in answer to Judge Sutton's question, are you saying we can affirm nonetheless because there's sufficient grounds? Or are you saying we should let Judge Sargas take a first bite and relook at this and set that aside and see if that was sufficient? I'm saying that you can affirm nonetheless because there is undisputed testimony on the record that the appellants took no action to ensure compliance with the court order. There are district court cases which talk about managers, in order to avail themselves of the impossibility defense, they have to give instruction to their employees to ensure compliance. They have to do something to show an effort to comply. Not just an effort to comply. They have to show that they took all reasonable steps to comply. So you're saying the impossibility inquiry is different with $10 million and without $10 million? I would disagree. Is it different between those two in this case when you look at what they had and didn't have? I would disagree with that because there are numerous cases cited in our brief in which courts have denied the impossibility defense when the attempters – Your point is if you make no efforts, who cares? That's enough by yourself. Not only is my point that, but there are cases cited in our brief and there are numerous decisions around the country in which people are held in civil contempt when they failed to liquidate assets, when they failed to take out loans, when they failed to do things to obtain the money in order to pay the obligation that was required. So there's a wealth of authority which would support a finding that even if you disregard the $10 million, the appellants are still liable for civil contempt or still engaged in civil contempt. How would this case look if there's not the $10 million? There's no escrow requirement. It's only the class member's money that's set aside. So there's nothing about escrowing the 1.5 for fees. What happens is it's a business that's shutting down, so they don't have revenue coming in, and every single expense is a legitimate expense. There's just not a single illegitimate expense. So when the contempt motion is brought, the officers just say, we just paid them as they became due. We had to. We had a duty. They would have sued us if we didn't, so we paid them as they became due. Then by the time the appeal is done, there's not 1.5. Would there still be civil contempt as to the officers? Yes, and Gary's Electric speaks specifically to that. Gary's Electric holds the individual in contempt because he paid all other creditors and made no efforts to preserve money. What about the argument that it's an ERISA case, so it sets it aside because it's a statutory compulsion? The holding in Gary's Electric has absolutely nothing to do with it being an ERISA case. Gary's Electric was focused on, and it's not just Gary's Electric. It's Wilson v. United States. It's Hothschild. The law is clear. Managers who aid and abet a company in violating an approval order can be held just as guilty. The reason I ask my question, I mean it does have a Gary's Electric component to it, but the reason I ask my question is your position seems to read into every one of these agreements a duty to escrow. That's why I ask the question because I don't understand, and that just seems very strange to me because the parties did it in one setting. They didn't do it in the other, and your answer to my question about the situation where they just fairly, honestly pay out expenses that they come due, the 1.5 happens to come last. It's not due until after April 20th. I don't understand how that's not a rule that implies an escrow in every one of these, and that puzzles me. But I think an important distinction is in this case, there's absolutely no evidence that any of these payments were due to the creditors. I'm asking a hypothetical. That's why it's a hypothetical. I'm not asking about this case, and your answer was in that setting, they're subject to civil contempt under Gary's Electric, and that to me is another way of saying every one of these agreements has an implied escrow, otherwise civil contempt and sanctions and personal liability. I guess I would disagree with that proposition because that is the entire purpose of the impossibility analysis. That's why a district court undertakes a review to find out what steps… I thought your answer might be it was impossible. I thought you were going to say to my hypothetical it was impossible to pay and the officers are not liable because they paid things as they came due fairly, and the 1.5 came due last. Bad luck, and I thought that would be the answer. If the court undertook the analysis and upon review of all the facts and all the testimony… I just gave you the facts. If it came to the conclusion that it truly was impossible for them to comply, then that would be the appropriate result in your hypothetical. Possibilities due to paying earlier bills because they came due earlier. If that was the ultimate conclusion, then that would be the appropriate result, and Gary's Electric doesn't disagree with that. Gary's Electric points out that you paid all other creditors with complete disregard for the creditor that's brought the motion for civil contempt. I'm sure we have more questions. With my final… You may even have a few things you wanted to say. With my final ten seconds, I will just sum up. You can say what you – I mean they went on a little longer. If you have things you want to tell us, tell them. I will just sum up that a very careful analysis of almost every argument made by the appellants shows that it's a complete contradiction of a prior position that they've taken in this case. The facts are in the undisputed record before the district court is that they had $14 million that they spent between 2014 and today. Almost all of that $14 million was spent exclusively on the managers. They were insider transactions, and they made no effort to comply with the final approval order. Thank you. All right. Thank you very much. So we have a new person taking the stage. All right. Mr. Owen. May it please the Court, David Owen here.  Your Honor, a couple of things I'd just like to… Can I ask you one question before you get to it, which is all along – what strikes – I think Judge Sargas is wrong, and I think the plaintiffs made a good point of all along you're sitting side by side with the plaintiffs' attorneys representing to courts that this settlement was fair and just. And at the same time, you're basically knowing you can't comply with it ultimately. And I mean that would strike any court as problematic because you're – I mean implicitly you're making a misrepresentation to the court. Let me break that down, Your Honor. First of all, we're not making any misrepresentations to the court. We signed a settlement agreement that said we would not oppose the attorney's fees, and we never did. We never supported or opposed the attorney's fees. We were silent on that. We did support the settlement agreement. We thought the settlement agreement was fair when we signed it. We thought the settlement agreement was fair when it was entered. We think the settlement agreement is fair today. That is a completely different issue than the ability of a company that sold its operating assets in 2012 and then waited as a series of events took place. But the plaintiffs are right that the managers – they testified. They didn't even know what was going on in the appeal, and they were taking no steps, none, to comply at any point in time. So in other words, the lawyers are out there making these representations while the managers are over here not paying any attention. Maybe that's common in corporations, but they're not paying any attention to what's going on on the legal front. I don't know that it's a fair characterization that they're not paying any attention. They didn't take any action. They didn't take any action pro or con. I thought one of them even testified that they didn't even know what was going on, right? Well, when they're owners of the company, you have an individual, Kobe Davery, who testified who's operating the company, who is managing, who is telling me your fees are too high, reduce your fees, who's questioning Dahl on their fees. We're calling Tom McCormick and saying, why are we paying Dahl to do all this stuff while he's up on appeal? He's getting bills in, to Judge Sutton's question. You're getting bills in, and the bill's due. It's not a bill that may become due. It's not a bill that you think could be due. It's a bill that's due. It's your attorney who's handling the Paramount case and attorneys, a case that they like to point out there's a $4.5 million. But at some point you knew you weren't going to be able to pay the fees, and no one said anything until the bill came due. I mean, that was the order. I'm sorry, Your Honor. It comes to whatever, April 8th. What is it, two days before April 20th? Is that when it was? We didn't have the cash then. We still had an appeal right in the Paramount case, which has since elapsed. We still have an insurance policy that may or may not be available. We did not have the cash. But the statement in the brief that we didn't have the assets is not correct. You just said something I wasn't aware of. You're saying you have an insurance policy that might cover the $4.5 million? There are two insurance policies. One, there's a small policy that was paying some of the fees in the case that they have declined to pay anything more. There was a director and officers policy that was uncovered that was denied back when the first claim was made. It was uncovered actually through the discovery of this. That's still being, I don't know if the word is litigated. It is not being litigated, Your Honor. But the reason is that the company is enjoined. We don't have any employees. Judge Sargas wouldn't let us pay the employees. They left. It's amazing. I just want to get this insurance thing. Are you telling me with Judge Sargas' cooperation there's a possibility of getting coverage for this? There is a possibility. It was a previously denied claim that denied the claim based upon it's under contract. The allegations that were alleged were more than contract. There's a split of opinions. How much is the policy for? Does it cover the fees? It would cover the fees. It was over $3 million. It's about a $3 million policy. It would cover the $2.4 million plus whatever else. It would. And the company has, in my desk today, I have the proceeds from the Paramount case, which is $234,000. Does Judge Sargas know about this insurance policy? He knows that there was insurance. He doesn't know specifically about the amounts or the part. The focus of this case is, remember, when we notified them we didn't have the cash, the purpose was to work with them, to sit down. And the company is committed to trying to pay the attorneys. The fact that we don't have cash, and there was an Exhibit 1 that was introduced that Kobe DeVere went through that shows how the decline went. A lot of this went to attorney's fees. They were reducing employees. They were reducing cost. That's what happens when you don't have operating income and you have a case that goes up to the Court of Appeals and the Supreme Court for about two years, and you have a Paramount case. We tried the case in 2015, Your Honor. Counsel, you talk about how you never objected or opposed the attorney's fees, all of that, and how you just didn't have the cash to pay this. But having been a party to the settlement, as the position of the company was changing, did you make any steps to bring this to the court and ask for relief within the settlement agreement? Because that's the other side. They didn't do anything. But did you, who had the affirmative obligation to pay and knew what the company's financial position was, did you take any steps to notify the court of anything relative to the obligations in the settlement agreement? The company did not, Your Honor. But remember that it's easy to look back now and see what has evolved over the last three years. What was happening is, in the Paramount case, we had a case that was pending in 2015. Late in 2015, late August, the judge rules on summary judgment, pairs down the case. We go to trial in October. We prevail. We make a petition for attorney's fees of over $1.1 million. We're the prevailing party. The judge decides there's no prevailing party. He denies that. That appeal time lapsed last week. We notified the other side. We've got this case. We notified the judge. We have this case. We need direction, Your Honor. We don't have employees. We can't spend any money. We'd like to help. So we tried later, but did we call them up and say we may not have enough money? No, Your Honor, because we didn't know. So this is rebuttal. Yes. I know you're new, and I know you were thinking of a lot of things you wanted to say, but I think to be fair to the other side, we probably ought to leave it at that. That's fine, Your Honor. Thank you for answering our questions. Thank you to all of you for answering our questions. We really appreciate it. Thank you for your helpful briefs. Interesting case. We're going to work through it and get you something as soon as we can. Thank you very much. We appreciate it. The clerk may adjourn court.